**FILED**

**JUL 26** 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )   No. 4:18 MJ 7232 SPM
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )   **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 313-9792. )

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Sirena Miller Wissler, Assistant United States Attorney for said District, and hereby makes application to this Court for a warrant and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) and 3123, authorizing agents/officers of the Drug Enforcement Administration (DEA) (hereinafter referred to as "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to obtain records and location information, including precision location information, cell site location information, and other signaling information, associated with the following cellular telephone, which is further identified as follows:

**TELEPHONE NO.:  (314) 313-9792**

**ESN/IMSI NO.:**    unknown-

**SUBSCRIBER:**    Lucas Kraemer

**ADDRESS:**    674 Green Forest Drive, Fenton, Missouri 63026

(hereinafter the **"subject cellular telephone"**).

## I.    Introduction & Relief Requested

1.      The undersigned applicant for the Government is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an "attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B).   Therefore, pursuant to Title 18, United States Code, Sections 2703(c) and 3122(a)(1), the undersigned may apply for an Order authorizing the disclosure of the telecommunication records and information requested herein.

2.      The **subject cellular telephone** is serviced by AT&T(hereinafter referred to as "the Service Provider").    The records and information requested herein are directed at location-related information and subscriber information associated with the **subject cellular telephone**, and may include information related to when the **subject cellular telephone** is located in a protected space, such as a residence.   This application does not seek to compel or acquire the disclosure of the content of any communications.

3.      The **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (hereinafter referred to as "the subject offenses"), by **Lucas KRAEMER**, and others known and unknown.

4.      The Government makes this application upon a showing of probable cause. Attached to this application and incorporated by reference as if fully set out herein is the affidavit of Jacob R. Sullivan, Task Force Officer, DEA which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described subject offenses can be obtained by locating and monitoring the location of the **subject cellular telephone**, without geographic limitation within the United States, including by obtaining precision location

2

information (e.g., GPS information), cell site information, signaling information, and records concerning the **subject cellular telephone** for a period of forty-five (45) days measured from the date the Warrant is issued -- *i.e.*, from July 26, 2018 to September 8, 2018, 11:59 p.m. (CT).

5. The present application requests relief in three forms. First, the application requests relief in the form of precision location information, including GPS information, associated with the **subject cellular telephone**. Second, the application requests subscriber records and cell site information, which does not include precision location information, associated with the **subject cellular telephone**. Third, the application requests authorization for the installation and use of pen register and trap-and-trace devices.

## II.   Precision Location Information Request

1. The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System (GPS) information, but not the contents of any communications, associated with the **subject cellular telephone**, for a period of forty-five (45) days from the date of any warrant issued hereon -- *i.e.*, from July 26, 2018 to September 8, 2018, 11:59 p.m. (CT).

2. The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

> (c)     Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record of other information

> pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--
>
> (A)  obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.      The Court has jurisdiction to issue a warrant for the disclosure of precision location information, as requested herein, because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c).     Specifically, the Court has jurisdiction over the offense being investigated.

4.      Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703.    In particular, Section 2703(g) states:

> Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.      Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.    In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### III.    Cell Site Location Information Request

1.      The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide

4

certain telecommunication records and information, including cell site location information, but not the contents of any communication, for the time period of thirty (30) days prior to the warrant and for forty-five (45) days from the date of the requested warrant -- *i.e.*, from July 26, 2018 to September 8, 2018, 11:59 p.m. (CT).   In particular, the Government requests the following telecommunication records and information:

(1)     subscriber information and all telephone numbers, ESN, MIN, IMEI, MSID or IMSI numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

(2)     subscriber information available for any originating telephone number;

(3)     Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls at the **subject cellular telephone**) for the above-specified time period;

(4)     cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)     call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone** number, and any information on what portion of that tower is receiving a transmission from the

5

**subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

        (c)      numbers dialed;

        (d)      call duration;

        (e)      incoming numbers if identified;

        (f)      signaling information pertaining to that number;

        (g)      a listing of all control channels and their corresponding cell sites;

        (h)      an engineering map showing all cell site tower locations, sectors and orientations; and

        (i)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**.

        (j)      historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD) and

        (k)      Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone**.

    2.     The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

        (c)      Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require

6

a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

(A)     obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.      The Court has jurisdiction to issue a warrant for the disclosure of requested telecommunications records, including cell site records because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c).   Specifically, the Court has jurisdiction over the offense being investigated.

4.      Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703.   In particular, Section 2703(g) states:

Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.      Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.   In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

## IV.     Pen Register, Trap-and-Trace Request

1.      The Government's application seeks an Order, pursuant to Title 18, United States Code, Section 3122, authorizing the installation and use of pen register and trap-and-trace devices,

including enhanced caller identification, as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, and including an Order authorizing the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information transmitted by the **subject cellular telephone** number further identified herein, and a trap-and-trace device, including enhanced caller identification, which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, for the time period from July 26, 2018 to September 8, 2018, 11:59 p.m. (CT).

2.      In making this application, the Government does not seek the contents of any communication, such that other legal process would be required.

3.      As previously outlined, the Government certifies that the information likely to be obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

4.      The Government further requests that the Order direct the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, here incorporated by reference, and any other applicable service providers, to initiate caller identification on the subject cellular telephone number listed above, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

8

5.     The Government further requests that the Order direct the furnishing of information, facilities, and technical assistance, as necessary, to unobtrusively accomplish the installation and use of the pen register and trap-and-trace devices, including enhanced caller identification, by the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications and any other applicable service providers, and with a minimum of disruption of normal telephone service.

6.     The Government further requests that the Order direct that the results of the pen register and trap-and-trace devices, including enhanced caller identification, be provided to the agents/officers of the investigative agency(ies) at reasonable intervals for the duration of the Order.

### V.     Changed Numbers, Compensation and Sealing

1.     The Government requests that should the subject cellular telephone and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap-and-trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

2.     The Government further requests that the Order direct that the lead investigative agency provide the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

9

## VI.     Sealing, Notification and Miscellaneous Considerations

1.      Pursuant to Title 18, United States Code, Section 2703, the Government requests that the Court direct that the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the following:

(1) subscriber information;

(2) length of service (including start date);

(3) the types of service utilized;

(4) instrument number or other subscriber number or identity, including any temporarily assigned network address;

(5) all available names, addresses, and identifying information, and other subscriber and service feature information;

(6)  toll records including incoming and outgoing telephone numbers;

(7) credit information, billing information, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone,

for the telephone numbers being dialed to and from the aforementioned **subject cellular telephone** at reasonable intervals for the past thirty (30) days from the date of this Warrant and at reasonable intervals for up to forty-five (45) days from the date of this Warrant -- *i.e.*, from July 26, 2018 to September 8, 2018, 11:59 p.m. (CT).

10

2.      Pursuant to Title 18, United States Code, Section 2703(c)(3), the Government entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the **subject cellular telephone**.

3.      This Court has authority under Title 18, U.S.C., Section 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

4.      In this case, such an order is appropriate because the Government seeks the warrant in part under the authority granted to this court pursuant to Title 18, U.S.C., Section 2703. The requested warrant is related to an ongoing criminal investigation that is not public and this portion of the investigation is not known to the subjects of the investigation. Premature notification may alert the subject(s) to the existence of the investigation. If the subjects were notified about the existence of the requested warrant, the subjects could destroy evidence. Accordingly, there is reason to believe that notification of the existence of the warrant will seriously jeopardize the investigation, including giving the subjects an opportunity to: flee, destroy and/or tamper with evidence; change patterns of behavior; or notify confederates. *See* Title 18, U.S.C., Section 2705(b)(2), (3), and (5). Based on the nature and circumstances of the investigation, there is also reason to believe that notification of the existence of the warrant will result in endangering the life or physical safety of an individual, or the intimidation of potential witnesses. *See* Title 18, U.S.C., Section 2705(b)(1) and (4).

11

5.      Based on the foregoing, pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2) and 2705(b), the Government requests that the Court direct the Service Provider and the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, not to disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order, to a subscriber or lessee or to any other person, except that the provider may disclose the warrant and any Order to an attorney for the provider for the purpose of receiving legal advice.

6.      The information requested herein does not require a physical intrusion or physical trespass into any protected space.   Accordingly, it is respectively requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the location information described herein at any time, day or night.

7.      The Government further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

8.      In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Jacob R. Sullivan, Task Force Officer, DEA, which is attached hereto and made a part hereof, applicant requests this Court to issue a Warrant authorizing agents/officers of the Drug Enforcement Administration (DEA) (the investigative agency(ies)), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information associated with the **subject cellular telephone**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this __26th__ day of July, 2018.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

SIRENA MILLER WISSLER, #55374MO
Assistant United States Attorney

13

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

AT&T

and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS
Last Update: 06/21/2018

**FILED**

'JUL 2 6 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )     No. 4:18 MJ 7232 SPM
INFORMATION,       CELL       SITE )
INFORMATION,       AND    OTHER )     **FILED UNDER SEAL**
SIGNALING             INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(314) 313-9792.                                    )

## AFFIDAVIT

Jacob R. Sullivan, being duly sworn, deposes and states that he is a Task Force Officer

(TFO) with the Drug Enforcement Administration (DEA), duly appointed according to law and

acting as such.

### Introduction

I have been a Task Force Officer (TFO) with the DEA St. Louis Division Office since

February 2018.   I am currently assigned with DEA Enforcement Group 37.   Since being assigned

as a TFO with DEA, I have been involved in numerous investigations involving drug-trafficking

organizations (DTO).   I completed the Jefferson College Law Enforcement Academy in 2010 and

have been employed with the Jefferson County Sheriffs Office for approximately six (6) years. In

2016, I was assigned to the Jefferson County Municipal Enforcement Group (J.C.M.E.G.) which

focused on drug activity primarily within the Jefferson County area.   The affiant has affected

numerous drug arrests for federal, state, and city ordinance violations and has successfully

completed multiple training classes for law enforcement personnel on narcotics investigations.

The affiant has additionally participated in the preparation and execution of several federal and state search warrants.

Based on my training, experience, and participation in the investigation of controlled substances, your affiant is familiar with the methods of operation of drug traffickers. During my tenure in law enforcement, I have participated in numerous drug investigations which have resulted in the seizure of cocaine, methamphetamine, heroin, MDMA or ecstasy, marijuana, U.S. currency and other controlled substances. I am familiar with and have used normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the utilization of undercover agents and the use of court-authorized wire intercepts. I am also familiar with federal criminal laws, particularly those laws relating to narcotics. I am part of an experienced team of narcotics investigators that have participated in numerous drug trafficking investigations utilizing various investigative techniques.

I have, through training and experience, become familiar with and utilized all normal methods of investigation including, but not limited to, visual surveillance, interviewing witnesses, the use of search and arrest warrants, the use of confidential sources, the use of pen registers, the utilization of undercover agents and the use of court authorized wiretaps. I am also familiar with methods of searching locations where narcotics and/or narcotic proceeds may be found. I have been involved in multiple drug investigations and have been involved in the arrest of numerous individuals for narcotics related crimes.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is

2

submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone utilized, by **Lucas KRAEMER,** (hereinafter **KRAEMER**), as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number (**314) 313-9792** (hereinafter the "**subject cellular telephone**"), which is being serviced by AT&T (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by **KRAEMER**, and others known and unknown.   The subscriber for the phone is Lucas Kraemer, 674 Green Forest Drive, Fenton, Missouri 63026.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

In May of 2018, DEA St. Louis, Missouri, Enforcement Group 37, along with the Jefferson

3

County Municipal Enforcement Group (J.C.M.E.G.), initiated an investigation into a St. Louis area drug trafficking organization (DTO), which is distributing multi-ounce quantities of cocaine in the St. Louis metropolitan area, Jefferson County, Missouri area and St. Louis County, Missouri area. During the course of the investigation, it has been established that **KRAEMER** is believed to be a leader/distributor within the DTO. Furthermore, investigators developed a Jefferson County Confidential Source (hereinafter CS).[1]  who has been able to exploit the **KRAEMER** Drug Trafficking Organization (DTO) and recently began conversing with **KRAEMER** via **Subject cellular telephone**. The CS advised that he/she has known **KRAEMER** for a considerable amount of time and knows that **KRAEMER** has had the ability to supply the CS with ounce quantities of cocaine on a regular basis based on the availability of **KRAEMER's** source of supply, who is believed to be in the Kansas City, Missouri metropolitan area.

Between May 23, 2018 and May 31, 2018, Jefferson County Municipal Enforcement Group along with DEA investigators utilized the CS to conduct a total of three (3) controlled purchases of cocaine from **KRAEMER.** The CS and **KRAEMER** communicated through the use of the **Subject cellular telephone**.

Based on my training and experience, your affiant believes that the **Subject cellular telephone** is being operated by **KRAEMER**.  The CS has routinely advised investigators that he/she has made numerous cellular telephone calls to **KRAEMER** via the **Subject cellular**

---

[1]  The CS's information has been corroborated through physical surveillance, consensual phone calls, either monitored or recorded by investigators between CS and KRAEMER, and verified through controlled purchases. The information provided by the CS relative to KRAEMER has never been found to be false. Also, the CS has provided investigators with reliable information that has resulted in numerous federal indictments, seizures of drugs and drug proceeds in other investigations.

4

**telephone** to conduct drug transactions.   Contact between the CS and **KRAEMER** has either been directed in the presence of investigators or verified through toll analysis of the **Subject cellular telephone**.

**A. First controlled purchase from KRAEMER on May 23, 2018:**

On May 23, 2018, at approximately 5:00 pm, investigators met with the CS at a pre-determined neutral location in Fenton, Missouri to arrange the purchase of approximately $440.00 in United States currency (hereinafter USC) worth of cocaine from **KRAEMER**.   A search of the CS and CS vehicle was performed by investigators for drug contraband and United States currency which was met with negative results. Investigators directed the CS to   conduct a monitored telephone call to **Subject cellular telephone** operated by **KRAEMER**, who instructed the CS to meet **KRAEMER** at the Greenmar Apartment complex located at, 512 May Valley Drive, Fenton, Missouri 63026 to conduct a drug transaction. Investigators observed the CS travel away from the pre-determined location under constant surveillance and travel towards the apartment complex where the CS met with **KRAEMER** and exchanged the $440.00 in USC for suspected cocaine. Following the drug transaction, investigators maintained a constant visual of the CS, who responded back to the pre-determined location where investigators immediately retrieved the narcotics from the CS, which field tested positive for cocaine.   Investigators seized the recording device which recorded the drug transaction. The CS was debriefed, the CS advised investigators that **KRAEMER** did in fact sell him/her the $440.00 USC worth of suspected cocaine and he/she positively identified **KRAEMER** as the subject he/she purchased from.

**B. Second controlled purchase from KRAEMER on May 31, 2018:**

On May 31, 2018, at approximately 4:00 pm, investigators met with the CS at a pre-

5

determined neutral location in Fenton, Missouri to arrange the purchase of approximately $440.00 in USC worth of cocaine from **KRAEMER**. A search of the CS and CS vehicle was performed by investigators for drug contraband and United States currency which was met with negative results.  Investigators directed the CS to conduct a monitored telephone call to **Subject cellular telephone** operated by **KRAEMER**, who instructed the CS to meet **KRAEMER** at Trueman's Place Fenton located at, 2097 Smizer Station Road, Fenton, Missouri 63026 to conduct a drug transaction. Investigators observed the CS travel away from the pre-determined location under constant surveillance and travel towards Trueman's Place Fenton where the CS met with **KRAEMER** and exchanged the $440.00 in USC for suspected cocaine. Following the drug transaction, investigators maintained a constant visual of the CS, who responded back to the pre-determined location where investigators immediately retrieved the narcotics from the CS, which field tested positive for cocaine.  Investigators seized the recording device which recorded the drug transaction. The CS was debriefed, the CS once again advised investigators that **KRAEMER** did in fact sell him/her the $440.00 USC worth of suspected cocaine and he/she positively identified **KRAEMER** as the subject he/she purchased from.

### C. Controlled Purchase from KRAEMER on July 3, 2018:

On July 3, 2018, at approximately 5:30 pm, investigators met with the CS at a pre-determined neutral location within Saint Louis County, Missouri to arrange the purchase of approximately $800.00 in USC worth of cocaine from **KRAEMER**. A search of the CS and CS vehicle was performed by investigators for drug contraband and United States currency which was met with negative results. Investigators directed the CS to conduct a monitored telephone call to the **Subject cellular telephone** operated by **KRAEMER**, who instructed the CS to meet at Des

6

Peres Park, located at 12325 Manchester Road, Des Peres, Missouri 63131 to conduct a drug transaction. Investigators observed the CS travel away from the pre-determined location under constant surveillance and travel towards the park where the CS met with **KRAEMER** and exchanged the $800.00 in USC for suspected cocaine. Following the drug transaction, investigators maintained a constant visual of the CS, who responded back to the pre-determined location where investigators immediately retrieved the narcotics from the CS, which field tested positive for cocaine. Investigators seized the recording device which recorded the drug transaction. The CS was debriefed, the CS once again advised investigators that **KRAEMER** did in fact sell him/her the $800.00 USC worth of suspected cocaine and he/she positively identified **KRAEMER** as the subject he/she purchased from.

It is the affiant's opinion, based on experience and training, the aforementioned facts demonstrate **KRAEMER** is utilizing the **Subject cellular telephone** to facilitate the distribution of controlled substances, the collection of proceeds of controlled substance sales, or in a conspiracy to distribute narcotics.

The investigation has demonstrated that the **Subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses).    It is critical that the investigative team be able to locate and monitor the movements of the **Subject cellular telephone**, thereby assisting in the location of **KRAEMER** if traveling on behalf of the organization to transport drugs and/or currency, the identification of additional co-conspirators, and assist with the ability to located **KRAEMER,** and therefore provide the ability to seize any drugs and/or currency. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals

7

of the investigation.

**Investigative Considerations and Techniques**

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.    For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.    Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.    Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

8

C.       Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.       Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI").  When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.       Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all

9

telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government.   The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service

10

providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.    Furthermore, the criminal conduct being investigated is not limited to the daytime.    Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.    Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy.   There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1) and 846.

07-26-2018

DATE

JACOB R. SULLIVAN
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this ___26th___ day of July, 2018.

SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

12

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

AT&T
_____
and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

**ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR
ELECTRONIC COMMUNICATIONS**     Last Update: 06/21/2018